# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GLENDA M.,**[1] | Case No. 1:21-cv-01890-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI**, Acting Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala Jr., The Law Office of John E. Haapala Jr., 401 E. Tenth Ave., Suite 240, Eugene, OR 97401. Attorney for Plaintiff.

Natalie K. Wight and Renata Gowie, United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Joseph John Langkamer, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

      Plaintiff Glenda M. seeks review under 42 U.S.C. § 405(g) of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for a period of

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

PAGE 2 – OPINION AND ORDER

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on October 8, 1977. AR 240. Plaintiff speaks and understands English, obtained her GED or high school equivalency in 1996, and has attended "some college." AR 45, 300, 302. In the fifteen years prior to becoming unable to work, Plaintiff performed qualifying past work as desk clerk. AR 70. On July 8, 2019, Plaintiff filed for a period of disability and disability insurance benefits alleging disability beginning on February 12, 2017. AR 13. Plaintiff alleged disability due to chronic and severe spinal cord impairment, nerve damage in the legs and arms, heart problems, thyroid problems, obesity, no feeling in the "private areas," kidney stones, learning disabilities, and shoulder problems. AR 301. At the time of application, she stood five feet, four inches tall and weighed three hundred and forty-two pounds. *Id.*

Plaintiff's claims were initially denied on December 4, 2019, and upon reconsideration on April 24, 2020. AR 13. On May 14, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* On February 23, 2021, Plaintiff appeared for her hearing by telephone before ALJ Bryan Henry, due to the extraordinary circumstances posed by the COVID-19 pandemic. AR 32. The ALJ issued an unfavorable decision on March 26, 2021. AR 10. On May 3, 2021, Plaintiff requested Appeals Council review of the ALJ's decision. AR 7. On November 24, 2021, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 1. Plaintiff now seeks review of the Commissioner's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
     significant mental or physical duties done or intended to be done for pay
     or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
     such work, she is not disabled within the meaning of the Act. 20 C.F.R.
     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
     substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
     impairment or combination of impairments is "severe" if it significantly
     limits the claimant's physical or mental ability to do basic work activities.
     20 C.F.R. §§ 404.1520(c), 416.920(c). Unless expected to result in death,
     this impairment must have lasted or be expected to last for a continuous
     period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
     claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
     §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
     impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the
     impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
     then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
     416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
     the listed impairments, the analysis continues. At that point, the ALJ must
     evaluate medical and other relevant evidence to assess and determine the
     claimant's "residual functional capacity" ("RFC"). This is an assessment
     of work-related activities that the claimant may still perform on a regular
     and continuing basis, despite any limitations imposed by his or her
     impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
     416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
     proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146, n. 5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1098, 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. AR 15. At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 12, 2017, her alleged onset date. *Id.* At step two, the ALJ found the following severe

impairments: degenerative disc disease of the lumbar spine status post discectomy; degenerative disc disease of the cervical spine; degenerative joint disease bilateral shoulders status post arthroscopic decompression; and morbid obesity. AR 15–16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. AR 18. Instead, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead bilaterally; never work at unprotected heights or with machinery; must be allowed to elevate legs to foot stool height, defined as height that would not interfere with the workstation, whenever sitting. *Id.* At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. AR 22. Finally, at step five, the ALJ found that Plaintiff can perform other jobs that exists in significant numbers in the national economy, such as Appointment Clerk, Check Cashier, and Telephone Solicitor. AR 23. As a result, the ALJ found Plaintiff not disabled. AR 24.

## DISCUSSION

### A.  Substantial Evidence Supports the ALJ's Credibility Determination Regarding Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ should have adopted her subjective complaints about her disabling symptoms. ECF 13 at 8. The ALJ, however, found that Plaintiff's subjective complaints conflicted with her medical records and activity level. AR 21. The ALJ properly summarized Plaintiff's subjective complaints and countered those complaints with evidence in the record that undermined Plaintiff's allegations. As such, this Court finds that the ALJ relied

on clear and convincing reasons to discount Plaintiff's subjective testimony and upholds the ALJ's decision.

### 1. Legal standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. Even still, the ALJ may not reject testimony "solely because" the claimant's

symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

Plaintiff first argues that the ALJ summarized the medical evidence without explaining why that evidence undermined Plaintiff's allegations. ECF 13 at 9. Plaintiff then argues that the ALJ did not rely on substantial evidence in discounting her subjective testimony. *Id.* at 14. This Court finds that Plaintiff's argument mischaracterizes the ALJ's findings, which include not only an outline of Plaintiff's subjective complaints but also specific evidence from the medical records that undermine her allegations. This Court also finds that the ALJ properly relied on both evidence of Plaintiff's daily activities and inconsistencies between Plaintiff's testimony and other evidence in the record in articulating clear and convincing reasons for discounting Plaintiff's subjective testimony.

### a.  The ALJ's Findings

To properly discount a claimant's subjective testimony, an ALJ must give "specific, clear, and convincing reasons for rejecting" the testimony by identifying "which testimony [the ALJ] found not credible" and explaining "*which* evidence contradicted that testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015). The ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 19.

This Court finds that the ALJ was sufficiently specific in reciting what testimony he found not credible, in contrast to the ALJ in *Brown-Hunter*. In *Brown-Hunter*, the Ninth Circuit held that the ALJ erred when she "simply stated her non-credibility conclusion and then

summarized the medical evidence supporting her . . . determination." 806 F.3d at 494. In contrast, this case, after finding that Plaintiff's testimony was not credible because it was inconsistent with evidence in the record, the ALJ "identif[ied] the testimony [he] found not credible" and "link[ed] that testimony to the particular parts of the record supporting [his] non-credibility determination." *Id.*

The ALJ addressed four specific complaints that Plaintiff raised at the hearing: difficulty walking and standing, difficulty sitting, difficulty climbing and stooping, and difficulty gripping and holding. AR 19. The ALJ noted that at the hearing, Plaintiff stated that she has back pain and her right leg will give out when standing or walking. AR 19, 56, 60. She also reported that she is unable to walk without holding onto something. AR 19, 63. After describing this testimony, the ALJ noted that "[w]hile [Plaintiff] does have some abnormalities in gait on some examinations, there is no prescription of an assistive device, and she does exhibit normal gait at times on examination, including as recently as July 2020." AR 21. The ALJ specifically cited to a medical record from a July 28, 2020 telemedicine appointment with Southern Oregon Neurosurgical and Spine Associates PC, where Plaintiff exhibited normal gait, a well-balanced posture, and the ability to walk on her toes and heels. AR 1967.

With respect to Plaintiff's ability to remain seated for limited periods of time, the ALJ noted that Plaintiff testified that she could sit for twenty to thirty minutes at a time. AR 19, 56, 62. This testimony, the ALJ concluded, was consistent with the finding that Plaintiff could work "at the sedentary exertional level" with additional limitations, such as elevating her legs to foot stool height whenever sitting. AR 18, 21.

The ALJ next identified Plaintiff's testimony that she was unable to climb stairs, stoop, crouch, or crawl. AR 19, 63. The ALJ found that this testimony was undermined by medical

evidence, including a September 2020 physical exam that showed no tenderness or weakness in her lumbar spine and a full and painless range of motion in all planes. AR 21, 2051. The ALJ also found that Plaintiff's testimony was undermined by evidence in the record that she cares for her two young grandchildren. AR 21.

Finally, the ALJ cited Plaintiff's testimony regarding problems gripping or holding things. AR 19, 66. The ALJ then explained that medical records from 2018 and 2019 showed that she had relatively normal grip strength in both hands, which contradicted Plaintiff's testimony. AR 20, 580. In sum, the ALJ pointed to the specific testimony that he found non-credible and connected that testimony to evidence in the record as required by *Brown-Hunter*.

**b. Inconsistencies in Evidence and Conflicts Between Statements and Evidence**

Plaintiff argues that the ALJ improperly dismissed her subjective testimony about her upper extremity weakness, limitations with walking, and inability to climb stairs or perform other postural activities. ECF 13 at 10–14. This Court finds, however, that the ALJ properly considered conflicts between objective medical evidence and Plaintiff's testimony in determining the severity of Plaintiff's alleged disability.

An ALJ must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [] medical sources or other persons about how [the claimant's] symptoms affect [them]." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Chaudhry v. Astrue*. 688 F.3d 661, 671 (9th Cir. 2012). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,
261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues that the ALJ's finding that Plaintiff's shoulder was no longer limiting was
not a clear and convincing reason to reject Plaintiff's upper extremity complaints of neck and
shoulder pain and hand numbness. ECF 13 at 10. This Court notes, at the outset, that the ALJ did
not completely discount Plaintiff's symptoms and found, "after careful consideration of the
evidence . . . that the claimant's medically determinable impairments could reasonably be
expected to cause the alleged symptoms." AR 19. Nonetheless, the ALJ found that "claimant's
statements concerning the intensity, persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.*

In assessing the severity of Plaintiff's neck and shoulder pain and hand numbness, the
ALJ relied on evidence from several medical visits where Plaintiff showed normal strength in her
extremities. At a March 2018 emergency department visit, Plaintiff's "motor strength [was] 5/5,
symmetric and bilateral in the upper and lower extremities." AR 1776. At a May 2019 primary
care provider visit, an examination revealed "some decreased sensation in her right upper arm
and forearm compared to her left," but also showed that her "[range of motion] [was] okay." AR
1502. At a follow-up appointment in June 2019 regarding Plaintiff's upper extremity symptoms,
examination of the right shoulder showed mild tenderness with trigger points of the right greater
than left trapezius and levator scapula. AR 580. But the examination also showed "no tenderness,
swelling, deformities, instability, subluxations, weakness, or atrophy" of the right upper
extremity, with full and painless range of motion in all planes. *Id.* The examination also showed
full range of motion in her shoulder, with full strength in all muscles, and no joint instability on

provocation testing. *Id.* And the examination showed relatively full strength in Plaintiff's right grip ("4/5") with full strength on her left grip ("5/5"). *Id.*

Plaintiff next challenges the ALJ's non-credibility determination regarding her claimed limitations around walking and standing. ECF 13 at 11. Plaintiff primarily faults the ALJ for relying on a July 2020 exam in which Plaintiff was found to walk with a normal gait and on heels and toes. *Id.* Plaintiff argues that relying on this assessment was improper "because the examination was qualified as having not occurred except as possible over the telephone." *Id.*; AR 1963. Plaintiff mischaracterizes the record when she describes the visit as occurring "over the telephone." ECF 13 at 11. Instead, the record is clear that the exam occurred over video. AR 1969. Nor was this exam the only time that Plaintiff showed the ability to walk with a normal gait. In March 2018, for instance, Plaintiff was observed at an emergency room visit as ambulating without difficulty and walking with a normal gait. AR 1776. In January 2020, Plaintiff likewise had a normal range of motion in the spine and a normal gate. AR 1915. Contrary to Plaintiff's assertion, the ALJ did not discount medical evidence that showed Plaintiff suffering some limitation with walking. AR 21 ("The record indicates that the claimant has limitation particularly in walking, standing, and lifting due to the combined effect of her impairments."). The ALJ did not err, however, in citing to inconsistent medical evidence to support his finding that "records do not indicate [Plaintiff] is limited [in walking and standing] to the extent alleged." *Id.* Nor did the ALJ err in drawing this conclusion despite evidence in the record that could support a different interpretation. *See Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, [courts] must defer to the Commissioner's decision.")

The same holds true for the ALJ's determination that "the objective findings do not indicate she is precluded from climbing stairs, stoop[ing], crouch[ing], or crawl[ing] as testified." AR 21. Plaintiff testified that she "can't walk up stairs" and that walking "up or down stairs is very hard." AR 57. Based on the evidence in the record, however, the ALJ found that although Plaintiff had severe physical limitations, she could nonetheless "occasionally climb ramps and stairs." AR 18. As noted above, this Court must defer to the ALJ's decision when it is supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. In drawing his conclusion that Plaintiff could occasionally climb stairs, the ALJ specifically cited an examination of her lumbar spine in September 2020 that found no tenderness or weakness, and a full and painless range of motion in all planes. AR 2051. The exam likewise found a full range of motion and full strength in Plaintiff's hips and knees. *Id.* This evidence contradicts Plaintiff's assertion that she can never walk up or down stairs. Plaintiff's own testimony at the hearing, moreover, suggested that she can—and does—occasionally climb stairs to do her laundry. AR 50. This evidence supports the ALJ's inference that Plaintiff can occasionally climb stairs and is therefore not limited to the extent alleged in her testimony.

With respect to the ALJ's findings regarding her inability to climb steps, Plaintiff again points to evidence in the record that contradicts the ALJ's findings, including the opinion of her primary care physician, Dr. Jason Pilcher, which stated that Plaintiff could never climb starts or ladders and could never perform the postural activities of bending, crouching, and squatting. AR 1946–47. Plaintiff also points to a treatment note from the September 2020 medical examination where the physician noted that "[g]oing up and down stairs and bending over produces [Plaintiff's] worst pain." AR 2049. As discussed above, other evidence in the record–including Plaintiff's use of stairs to do laundry, as well as numerous medical findings of normal strength

and motion–support the conclusion that Plaintiff could perform these functions to some, albeit limited, degree. *See* AR 50, 2051. This Court cannot reject an ALJ's conclusion, if supported by clear evidence, merely because other evidence supports a different interpretation. *Batson*, 359 F.3d at 1193.

### c.  Daily Activities

Plaintiff also argues that the ALJ erred in relying on Plaintiff's role as the primary caregiver to her two young grandchildren as evidence to reject her subjective testimony. ECF 13 at 14. This Court finds that the ALJ properly considered Plaintiff's daily activities as contradicting the extent of her alleged symptoms.

An ALJ may consider a claimant's activities when evaluating the reliability of their symptom allegations. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). "The mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, there are nonetheless two grounds where daily activities may form the basis of an adverse credibility determination: (1) a plaintiff's daily activities contradict her other testimony, or (2) a plaintiff's daily activities are so substantial as to involve skills or physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and citations omitted).

The ALJ did not err in relying on Plaintiff's daily activity of taking care of her two young grandchildren, ages one and five, to discount her subjective complaints. As noted above, the ALJ found that Plaintiff did indeed suffer from some difficulty functioning; but, the ALJ also found that despite Plaintiff's limitations, she is able to work at the sedentary level. AR 21. The ALJ also noted that Plaintiff was not the sole caregiver for the two young grandchildren and that she did have help from her family, including her mother and older children. *Id.* Nonetheless, the ALJ

found that Plaintiff's ability to live alone with her two young grandchildren and "dress[] them, change[] diapers, and feed[] them" undermined her subjective testimony that she could not climb stairs, bend over, or lift at least ten pounds. AR 21, 22. In sum, the ALJ relied on Plaintiff's daily activities to "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). This was not error.

**B.  Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence**

Plaintiff alternatively argues that the ALJ erred when he rejected the medical opinions of Plaintiff's primary care provider, Dr. Jason Pilcher. For the following reasons, this Court finds that substantial evidence supported the ALJ's evaluation of Dr. Pilcher's medical opinion evidence. As such, this Court must affirm the ALJ's determination. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) (affirming the ALJ's determination where the decision to discredit a physician's medical opinion was supported by substantial evidence).

**1.  Legal standards**

For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer weigh medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. *Id.* §§ 404.1520c(c), 416.920c(c). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The ALJs are not required to explain how they considered other secondary medical

factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(3); 416.920c(b)(3).

Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Likewise, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### 2. Analysis

Because Plaintiff filed her claim on or after March 27, 2017, the ALJ was required to discuss the persuasiveness of Dr. Pilcher's medical opinion using two factors: supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see generally Woods*, 32 F.4th at 787. This Court finds that substantial evidence supports the ALJ's conclusion that Dr. Pilcher's opinions were unpersuasive.

As the ALJ noted, Dr. Pilcher's opinion was unsupported by his own treatment notes. AR 22. According to Dr. Pilcher's medical opinion, Plaintiff was fully incapable of stooping, crouching, or climbing stairs and must keep her legs elevated for eighty percent of an eight-hour working day. AR 1945–48. But Dr. Pilcher's treatment notes often found that Plaintiff had a normal range of motion in her spine, normal strength, and normal gait. In early 2017, for instance, Dr. Pilcher noted that Plaintiff could stand on her tip toes, "walk well," and lift her right leg without pain. AR 1457. Later, in August of 2017, Dr. Pilcher examined Plaintiff after she fell out of bed and found that while she had to use an assistive device to walk, she did not have any spinal tenderness or misalignment. AR 1472–73. Dr. Pilcher repeatedly observed no

acute distress during Plaintiff's medical visits. AR 1462, 1465, 1467, 1481, 1484, 1494, 1498, 1911, 1914, 1918, 1921, 1924, 1929, 1932, 1950.

In early 2020, Dr. Pilcher observed that Plaintiff had a normal range of motion in her spine and legs, with normal muscle tone and strength in her spine. AR 1915. Later, in March of 2020, Dr. Pilcher noted that Plaintiff was responding well to her medication and that her "pain has been less." AR 1931. And on October 28, 2020—the same day that Dr. Pilcher completed his medical opinion form, AR 1948—Dr. Pilcher conducted a physical exam of Plaintiff and found that she had a normal gait, AR 1959. These normal findings undercut Dr. Pilcher's medical opinion that Plaintiff was limited to the extent alleged.

Plaintiff argues that the ALJ should have discounted Dr. Pilcher's normal examination notes because "[e]xamination findings represent a moment in time and the physician's opinion reflects years of treatment, diagnostic imaging, care from other referred providers, and Plaintiff's own allegations." ECF 13 at 17. But under the revised Social Security Administration's regulations, the opinion of an examining physician is not given any more inherent weight than any other medical evidence; instead, "an ALJ's decision, including the decision to discredit *any* medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787 (emphasis added). As discussed above, substantial evidence supported the ALJ's finding that Dr. Pilcher's medical opinions were not supported by evidence in the record, including his own examination notes. *See* AR 1915, 1959.

The ALJ also concluded that Dr. Pilcher's medical opinion was inconsistent with other evidence in the record, such as Plaintiff's daily activities. While the Ninth Circuit has held that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)),

inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins*, 261 F.3d at 856. Here, the ALJ specifically found that Dr. Pilcher's medical opinion that Plaintiff needed to elevate her legs to hip height for eighty percent of an eight-to-ten-hour day was inconsistent with other evidence in the record. AR 22. Plaintiff's testimony indicated that she lived alone with her grandchildren and changed their diapers, prepared their meals, took them to medical appointments, bathed the one-year-old, and homeschooled the five-year-old. AR 42–43, 49, 52–54. The ALJ reasonably concluded that these activities are inconsistent with needing to keep her legs elevated to hip height for eighty percent of the day. AR 22.

Plaintiff argues that the ALJ misconstrued the evidence in the record by finding that she was the primary caregiver for her two young grandchildren. ECF 13 at 17.[2] To the contrary, the ALJ acknowledged that Plaintiff testified that she received some help from family in caring for the children, AR 21, and specifically inquired as to whether Plaintiff was the children's sole caretaker at the hearing, AR 43. Plaintiff also argues that her activities in taking care of the grandchildren do not mean that she does not need to elevate her legs above hip level for eighty percent of the day. ECF 13 at 17. But Plaintiff's argument asks this Court to draw a different conclusion based on the same evidence examined—and cited to—by the ALJ. This Court may not substitute its judgment for that of the ALJ. *See Batson*, 359 F.3d at 1196 ("When evidence

---

[2] Plaintiff also argues that the ALJ erred because he concluded, at one point, that Plaintiff "takes care of four young children." AR 22. The record demonstrates that Plaintiff cares for only two children. AR 43. The ALJ describes Plaintiff as caring for two children at other points within the Opinion. AR 21, 22. Because the ALJ otherwise referred to the correct number of children throughout the Opinion, this Court finds the ALJ's single reference to "four young children" is harmless error because it was "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal quotation marks and citation omitted).

reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Consequently, this Court rejects Plaintiff's argument that the ALJ improperly discounted the medical opinion of Dr. Pilcher. The ALJ articulated specific reasons based on substantial evidence in discounting Dr. Pilcher's medical opinion as unsupported and inconsistent with the objective record.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 15th day of March, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge